Would the court call the next case, please? Number 270550, people of the state of Illinois, a plea by Gary Yemenovic v. Daniel Belknap and comment by Paige Fleck-Strong. Ms. Strong, good afternoon. May it please the court, counsel, my name is Paige Fleck-Strong and I represent Daniel Belknap in this case. We've taken that motion. I thought we might want to talk about that. Yeah, I mean, it looks like we don't have jurisdiction. Well, I disagree, and let me explain why. First, if you look at the history of this case, and I understand the case law regarding timing of a written judgment, I understand that and I acknowledge all that in my response. And also it's covered by the fact that our Supreme Court says that we have to raise this issue on our own to respond to it because if we don't have jurisdiction, even though it's, you know, it's almost like in some cases futile not to reach the merits of the case because it's going to come back. But they say with a mandate and a directive that if we don't have jurisdiction we shouldn't be hearing the case. And I can tell you why that is not, these facts don't fit into that in the way that they first appear to. When this, just as a brief history, when the petition was filed way back in 2015, it sat for so long, it sat forever and ever and ever because the state didn't participate in anything. Ultimately the trial court set up for an evidentiary hearing because the state had never filed a response. And I'll just give you that as background to understand why things happened as they rolled out. When the trial court issued its decision, it was received by fax. The decision is complete. It makes its ruling. There's no call for a further written order at all. Notice of appeal was filed partly because throughout this entire case the state had ignored it. The concern was let's get a notice of appeal on file because if we don't someone will show up and say we missed our 30 days even if the state didn't follow up with an order. You know, I made a statement that they said not to follow up with an order, but on August 16, 2017, the trial court filed its written opinion denying the defendant's post-conviction petition. And the conclusion in that opinion is based on the foregoing, the post-conviction petition, the defendant is denied on both grounds. Attorney Parkinson, the attorney for the state, is directed to prepare an order consistent with this court's ruling. Yes, the trial court's decision does direct him to do that. However, had no order ever been presented by the state, this written decision is sufficient. It's a final judgment. The request for an additional order, superfluous, unnecessary. And with the history of this particular case where the state never did anything they were supposed to do over years, perfectly legitimate to move forward and follow the notice of appeal. That's not quite true about if the court directs that an order be prepared, then there's not a final order until the order is prepared. What if it was never prepared? My 30 days would have run and I couldn't have filed a notice of appeal and that was the concern. If there was never a final order, where's the 30-day problem? We would have continued to be in limbo for more years just as we were if we would have filed the petition originally. Theoretically, hopefully, somebody would have done something. Theoretically, someone would have done something when the petition was filed originally too, but that would never happen. I know, but the court or somebody would have done something. I'm just going to get into that. These documents were all done by mail because even as you know now, despite the Supreme Court rules, the courts are not accepting any fines in criminal cases. Everything was done by mail. Multiple times throughout this case, things were mailed to the McDonough County clerk never received, never to the circuit clerk, never received. It was filed, stamped, went on over and over again. This was an ongoing problem in this case. I don't know if it was complicated by the fact that the judge himself actually sat somewhere else. So documents were sent all over the place, never received, never returned, filed, stamped. It was a nonstop mess, frankly, the entire thing was. So our position is that despite the fact that the trial court ordered the state to file a written order had it never been done, his order is completely sufficient to serve as that final judgment. But he said do an order and the law, the case law is If there's a directive to do an order, it's not final until the order's in. So what should have happened is that the circuit clerk should have stricken the notice of appeal filed by us because it was premature based on that information. No one did that. It was never brought to anyone's attention until years later when it was not correctable. So this is not exactly like all of the case law that is cited in which an order is clear that, for example, an oral pronouncement clearly the order has to follow. That makes sense. Well, this is very common to have a written order and direct, that the parties prepare an opinion with a directive to prepare an order. That's common. In this case, though, it wouldn't have mattered if he ever did file the order. It wouldn't have made any difference if the state had filed that order. I could have filed that order the following day. I could have done any of those things. And then at that point, once the written order was filed, it was clear on the face to the circuit clerk that there was a problem. In any other criminal case where a notice of appeal is filed prematurely, like, for example, before a motion to withdraw a plea is filed, a guilty plea case, that's what happens. Notice of appeal is stricken. Everyone's put on notice that we have a problem here. We have to do some different procedural things. That didn't happen in this case. Here we are years later, years later when this issue comes up. And just as you alluded to, you know what happens if you dismiss the appeal. We file another post-conviction, allegedly ineffective. We come right back here again. And this innocent man spends another three years in prison waiting for it to happen. And I'm not sure if that's what the Supreme Court means either. I'm not sure they mean for that to happen under these circumstances. Did you get a copy of the final order? The final order? The one that the state wrote? Mm-hmm. Ultimately, yes. But, I mean, much, much, much later. Much later. As was common in this case. They didn't send you a copy of it? Well, I can tell you that every document that the judge sent me, including his own decision, was sent to a previous employer even though I had done a substitution of counsel showing that I didn't work there anymore. There were those sorts of problems throughout the case. There were a lot of those types of things. So, with an overabundance of caution, we're getting notice of the appeal on file because we're appealing this decision. We're crossing our T's and dotting our I's everywhere. And then this happens. So, we're stuck. We were stuck at this point. With nothing else to do but continue on with what we were doing and hope that this court would see that these circumstances were different. That this is not as clear as the Supreme Court rule which says, in all cases this happens. Maybe all facts don't support that happening. And this is one of those cases where the facts do not support it. The Supreme Court directive, I mean, rulings on this, there aren't exceptions to it. We have to look at whether we have jurisdiction. If we don't, we're not supposed to go forward. And I agree with that. My argument is that you do have jurisdiction despite the fact that this happened in this particular manner. Because there's so many other steps where it could have been corrected where obligations of the circuit clerk existed. They didn't do anything. There's so many different steps that could have been taken, should have been taken by other people with directives as well. And they didn't do that. Well, what are the obligations of the circuit clerk? Because can circuit clerks strike a pleading? It happens to me all the time. They do. Do they really? They certainly do. Or they are taken to the judge to whom that is an issue, and he strikes it. And notice is sent out saying this has been stricken as premature. It happens all the time. I mean, if there's a judge doing it, it's one thing. If the clerk is doing it to a spot, that's a different thing. The courthouse, the authorities in the courthouse, the judge, I could have stood in that courtroom had I been in there when the decision was rendered and said we want a notice of appeal filed. And the circuit clerk's job is to file it. So they do have obligations. So I don't know that this would necessarily be any different. I'm sure you've seen motions for summary relief all day long about premature notices of appeal all the time. And there are remedies for them at that point early on when they can be fixed. Here we are in 2019, after years of online, while we've worked on this, to run into this problem here. It's not justice. I don't think that's what the Supreme Court meant. I think there is a way around it if you choose to find it. And we would ask that you would do that. Do you have any case, though, that shows the way around it? I did file a response to the motion just from there somewhere. And I know that I included some authority in there about the need for a written order to follow a written opinion and whether that's redundant or not. This wasn't a cursory docket entry. You're talking about the case law? I mean, your argument? I'm asking whether or not that order was absolutely necessary at all. Had it never been filed. If it's redundant or not. Yeah, that's what I focused on. Because what if this had been a docket entry that said, denied, someone to prepare an order? It would have been a different situation. We have a full-blown opinion. Seven pages long. Single space. That is an order. That's the only order that was necessary. Nothing else would have. What's to stop the judge from saying every time he gets a document, someone else file another order? You file another order. Have we done this for six years? What, we wait for somebody else to file another order? I mean, there needs to be an end to it. This isn't a case where deadlines are missed. This was a case of extreme exuberance to make sure the ball was moved forward as it should have been to not miss deadlines and to make sure this court got together this case. Beyond that, I've got no other answers for you. Beyond that, I've got nothing for you. Do you want me to get into the merits of the case? I don't have a problem with that. Okay, thank you. So in this case, we raised two issues that are pretty significant. And with my limited amount of time, I just want to briefly address my first issue. And this was about whether or not the testimony of Youngblood and Lambert, who we presented at the evidentiary hearing, who were there to impeach the testimony of the jail house snitches. Was their testimony material such that it should have been relevant? The judge ruled that, yes, it was newly discovered. If it was admitted, it absolutely had the probability of changing the outcome on trial. His ultimate conclusion as to why he decided their testimony would not have been admissible is because they were impeaching the testimony of a man named Nathan Wallick. And based on the rules of how long my brief can be, my brief is 50 pages, and so I attached the bulk of the facts on the post-conviction petition, and I apologize for that, but this was two murder trials in the long history, and there was no other way to get those facts before you. Nathan Wallick was the source of the information that was provided to Ehlers and Merchants, who did testify at trial. Both of those men testified that during the course of their incarceration with Mr. Belknap, that he confessed to that. Now, the things they say he confessed to, they don't match each other, they've already been disproven by the police, they don't match the forensics, but they claim that he said these things to them. So we bring to a... The Supreme Court wasn't bothered by that. Pardon me? The Supreme Court issued an opinion dealing with their trial testimony. Because they didn't get to hear the things that I had, that I brought to the post-conviction petition. At the post-conviction hearing, I brought two inmates who said, Nathan Wallick told me he set him up. Nathan Wallick told me, if you make up things, you can get what you need. In fact, I did that in a child murder, I've done accounting once. That's what Nathan Wallick said to my witnesses that I put on the stand,  In fact, probably some backlash for testifying. So that's the information that we want to present. We think a jury should have heard that Nathan Wallick admitted he made all of this stuff up. So the trial court says, in its decision, its opinion, that, well, that's good evidence, good stuff, but it's not material because Nathan Wallick didn't testify at trial. And I say that's a distinction without a difference, and this is why I say it. Both Burgess and Ehlers had the opportunity to get information from Nathan Wallick. Nathan Wallick was a local who heard rumors, who knew things, you know, through the grapevines, you know, from the small-town area. He knew some stuff, he knew some of the parties involved in the case. And he had come by a lot of information, mostly through the rumor mills and Facebook posts and internet blog postings. He'd come through a lot of information. Now, most of that information the police knew was not true, they always knew it was not true, and that's why he didn't testify at trial. They knew none of that was true. But those facts made it into the mouths of Burgess and Ehlers, who turned those into a confession from Danny. There was never a confession. If there had been a confession, it would have been somewhat accurate. And those statements weren't accurate. What both Burgess and Ehlers claim that Danny Belknap testified to is belied not only by their own statements, but by the forensics. It's inconsistent across the board with statements that both Burgess and Ehlers made before. So, the trial court decided that that evidence wasn't material because Nathan Wallach wasn't a witness. And so therefore, he doesn't need to be impeached. I disagree. If we can give you an alternative source for where these jailhouse judges got their information, that is vital. The trial court recognized it was vital. It said in its opinion that it was vital, and it would probably change the outcome of the trial if it had been admitted. It just wasn't admissible. We need to look at what's happening in this state and across this country. In 2018, we exonerated 49 men in this state. Three times any other state. And it's these kind of cases that it happened in. So, to rest on Nathan Wallach wasn't a witness, when we can track where the information came from, how it got there, how it was convoluted and turned into a confession, so that jailhouse judges can lie about Danny Belknap, we cannot ignore that this is how people get wrongfully convicted. And we're putting some oversubstance here. If we continue to allow judges to rule, well, you know, probably you're right, but that's not technically. Not technically, so we're not going to ignore it. That's not fair. That's not justice. And that's not how this is supposed to work. Now, there are other issues that we raise, and I am limited in this because I raised 14 instances of trial counsel ineffectiveness. And obviously I can't talk about 14 instances in the few minutes that I have. But there are some very significant ones I want to hit on. Joseph Burgess, one of the snitches, had made police statements for a while. He testified at a first trial. He testified at a second trial, and he never said the same thing twice. Never. Yet he wasn't impeached with those by trial counsel. I don't know why. I can't imagine why. He was the nail in the coffin for Danny Belknap. Why would he impeach him with everything that came out of his mouth? There's no strategy in the world that can justify that. None. It can't be that it wasn't good enough. They're direct opposite statements. At one point, he told the police that Danny said he slapped her and then just went berserk. Another point, he said he never asked him for any details, and Danny never gave him any. At the second trial, he said Danny said a number of things, including he admitted that he killed her. First time anybody ever heard that. And he actually had his testimony under oath at a previous trial, plus recorded police interviews, which are attached to my post-conviction petition, to show you that he told a different story every single time, and yet defense counsel didn't point that out to the jury. That's pretty significant. That's a big one. There are several other things of that nature. A lack of making use of positive information, information that would support Danny. Let's talk about Dr. DeBosch. This is a weird situation. Dr. DeBosch was the original. He was her pediatrician who happened to be at the ER when she was brought in. He did a number of things right off the bat. First thing he does is start screaming about child abuse, which I certainly understand from a professional in his position having those thought processes. I understand it. At the first trial, he testified, and he testified about child abuse. He was never qualified as a child abuse expert. There's a plethora of case law about what it takes to testify as an expert in a particular field. He was a pediatrician. He was not a child abuse expert. He wasn't a forensic pathologist. Pediatricians testify about whether or not this appears to be abuse or not, don't they? They can if they are so qualified specifically, and there have to be particular foundational questions, and none of that happened here. It's just child abuse, child abuse, child abuse. He also made that statement to multiple other people involved in treatment, who then also got on the stand and testified about child abuse, child abuse, child abuse, who were not qualified to do any such thing, and they were following his lead because that's what he had said. He wasn't qualified as an expert. He wasn't allowed to testify to that. The trial counsel did nothing about it. Another really weird thing that happened with Dr. DeBosch is he said early on, and no one knows why, he said this to the family, and this evidence is presented by the family of the victim, that the child had been sodomized and broken from head to toe. There was no such evidence. The child was not sodomized. She was not broken from head to toe. She had a head injury. Devastating as it is, the word sodomy in a 5-year-old girl obviously ignites the passions of anyone. It ignited the passions of the family, who then realized, little girl is damaged in our daughter's home. It's either our daughter, who's a meth addict, or it's her boyfriend. You throw in the word sodomy, and when do you start thinking? It's got to be a man. So they say to him, you can't come to this hospital. You stay away from here. Danny reacts as anyone would, who's rushing to the hospital to see about this child who has come to love as a child with his girlfriend, makes him sick when he hears the word sodomy. And they say, you don't come here. So he doesn't come there. They use that as consciousness of guilt evidence. This child wasn't sodomized. And while that doesn't actually, that word isn't used by Dr. Devast in the first trial. It permeated the entire case. Other people use that word. And it shows you how the entire case changed from horrible something, horrible head injury, to, we got a man we need to be looking for here. It changed everything. It changed the way the case was investigated. It changed the way it was perceived by the public. The third problem with Dr. Devast is, in between the first trial and the second trial, he leaves the country and goes back to Egypt because he's been convicted of fraud. So when they use his testimony at the second trial, they just read his previous testimony. No one brings up the fact that he's been convicted of fraud and fled the country. That's a credibility issue. Now, I realize Dr. Devast is not the only one who came in with the information that this child died of head injury. He's not the only one who said that. He wasn't even the head player who said that. But he had been the poison in the well for this entire case. His credibility mattered. When talking about whether or not the child was sodomized or told sodomized, how that affected Danny Belknap and his consciousness of guilt evidence, all of that was important stuff. And to find out that the man who said it in the first place and also said child abuse so many times is a convicted liar, you don't think that matters to a jury? I would hope it would matter to a jury I would be standing in front of because credibility is what every one of these witnesses brings to the table. And if they didn't, they don't have any credibility. The jurors need to know that. For some reason, trial counsel didn't do anything with that either. Just let go. And it would have been simple. We attached those documents to our post-conviction petition and were admitted into evidence, I believe with no objection from the state, to show that he had been convicted, he had lost his medical license, he had had a number of problems. And all of that was presented and accepted as fact at the eviction hearing. Beyond those few errors that I just spoke about, the trial counsel errors, the trial court's opinion totally brushes over the other 10 or 11 errors that we raised and presented evidence on and argued at length at the post-conviction hearing. We have a seven-page, single-spaced decision here. About a page and a half is about ineffective assistance. And it says all the same things I always say about Dr. DeBosch when he was impeached. And he didn't say so to me, so he addressed him. And then the rest of it was, oh, that's all harmless error. Or trial strategy, one or the other. There can't be trial strategy for failing to impeach witnesses. And these defense counsels, while they did a good job with a lot of work, made massive errors in failing to impeach some of these witnesses. Not only did they fail to impeach witnesses, sometimes they offered information on their own that never should have been out there. Trial counsel asked Burgess to clarify about when Danny confessed a murder to you. Well, a man confessed murder to you, didn't he? Shouldn't you remember when that was? Nobody had ever said that before. And trial counsel elicited it. How is that a strategy that can help anybody? It can't. There's no possible reasonable trial strategy. I can see no trial strategy there at all. Let alone one that approaches a reasonable standard. It's just not there. Unfortunately, the trial court didn't really address any of those things. They glossed over it and just said, that's trial strategy. And he couldn't have been hurt by those things. So we're going to just look at the second problem straight on and say, he couldn't have been hurt by these errors. Well, let's talk about them. Let's at least put something in the order so that we know what you mean. He couldn't have been. But that's not there. So what we're asking this court to do is ask for more from trial courts who are considering cases of actual innocence. Ask for them to give us a reason that they find someone was not effective. It's like giving you 14 allegations of ineffective assistance. Do me a favor and give me a ruling on 7 of them, 8 of them, 10 of them. Something so that I can bring it to you and show you that the trial court didn't do that. When you consider all of those errors combined in line with the fact that absolutely no forensic evidence tied this man to this case didn't tie him to this case any more than it tied mom to this case. There's absolutely nothing physical to say Danny Belknap did this. And we have an alternative suspect. And we have a bunch of jailhouse snitches who are proven liars, many of them convicted of being proven liars, but also who've made up stories that don't match. They don't match the science. They don't match each other. They don't even match themselves when they tell a story over and over again. That shouldn't be enough to have a full murder conviction. Not in this state and not in any state, but particularly in this one where we know the errors that we've been making here for 10 years, 20 years, 40 years, that are just now coming to light. We're not even surprised anymore when we hear there's been another wrongfully convicted person. This is another one of them. And he deserves to have this heard. He deserves to be granted a new trial. He deserves a chance to have defense counsels who actually present the evidence that helps him and not present the evidence that damns him. And that's what his attorney is doing here. So we would ask that you deny the suspicious conviction petition and remand this for a new trial. Thank you. Any other questions? Thank you, Ms. Strachan. Mr. Ganetovic. Good afternoon. Good afternoon, Your Honor. I'm here to declare counsel. And having gone over the Commonwealth trial and checking the court's jurisdiction as I usually do when the case comes across my desk. Supreme Court Rule 272, which is applicable to the Commonwealth of New York, states a relevant part of the announcing final judgment. The trial court requires submission of a reformed written judgment that is the executive of the trial court that requires the prevailing party to submit a draft order. The judgment is said to be final only when the signed judgment is filed. And when we look at in this case what happened, the judgment was issued. Mr. Parkinson submitted an order that was subsequently filed I think about 18 days later. The day before the judgment was actually signed by the trial judge, Ganetovic was repealed. And the fact of the matter remains the Supreme Court Rule is what the Supreme Court Rule is. And in the similar kind of case, in the case where the state was kind of making the same kind of prejudicial argument that the defendant made today, this case of people versus the dialogue, second history case, the second history trial court said the state contends that dialogue is distinguishable because unlike the defendant in that case, the state would be prejudiced by the dismissal of its appeal. Obviously, a party would be prejudiced any time its appeal is dismissed. The jurisdictional rules would serve no purpose if a party could avoid their effect merely by claiming prejudice. Moreover, the obvious purpose of Rule 271, like its companion Rule 272, is to avoid confusion concerning when a final order or judgment is entered. This purpose would be frustrated if the ultimate determination of the entry of the final order remained contingent on the subjective determination of prejudice. Like the rules governing guilty pleas, Rule 271 and the rule of procedure of non-suggestion, counsel and courts alike are bound to follow. That's how people versus the dialogue is. There are issues as to when final judgment is final. There are issues as to when those of appeal were found to make sure that there was a development of jurisdiction. And what Noah Strunkor did is they set forth specific rules that they can delineate and eradicate that particular problem. In this case, the defendant's notice of appeal was filed the day prior to the entry of the order. I think as Your Honor pointed out, until, and as the rule says, the final order, there would have been a final order in this case. So the 30 days never really began to run. The 30 days did not have begun to run until the filing of that order. And whatever was going on with respect to the lay, et cetera, there are things that could have been done, things that could have been brought to the attention. I've seen this in other cases. And so it's not as though this case had been languished for 5, 10, 15, 20 years. And so in this particular situation, I think this court does not have to render a decision in this case. And in fact, this appeal should be dismissed. Turning, however, to the merits of the case. In case we decide to take over the traces. In case that you deny the motion, when we take a look at the trial judges' board, well, first of all, I guess I should maybe point out, I should maybe consider, what is the evidence that is thought to be in this case? It is hearsay. It is none but supposedly testifying to what Walden said. Somebody saying what somebody else said without the assertive actually being there to cross the table. Okay? Lambert, he's basically testifying to what Youngblood said Walden said. Actually, Lambert is basically double hearsay, and Lambert really doesn't offer anything. He even testifies, I don't even know Walden. We've seen what Walden saw. And the trial judge's decision doesn't even reference Lambert. It just deals with Youngblood. So Youngblood's testimony is supposedly what Walden said to Youngblood. Well, when this evidence was about to come out, the state left an objection. The defense counsel said that either without offering the truth of the matter asserted, or simply submitting it to show what Youngblood did. The effect on Youngblood. Okay? The first question that comes to my mind is what does that prove in terms of a claim of actual innocence? What Youngblood did is, Youngblood went to Internal Affairs and wanted to transfer out of that particular pile of whatever the wallet was in, wanting to get away. Didn't say anything to anybody about anything, didn't do anything. Just what? And got us transferred. What does that prove? How does that prove actual innocence? I know the counsel tries to attack Walden's impeached wallet, therefore we show this, this, and this, and this. Well, that's all supposition, because basically, we're trying to take and use what is really impeachment evidence as substantive evidence. And so first of all, is hearsay. Second of all, when you offer, when indivisible hearsay is offered for a limited purpose, it can't be used for anything else. So if the stated purpose here is to show what Youngblood did, that's all that this evidence can be considered for. Period. And whatever Youngblood did has absolutely no impact whatsoever on the claim of actual innocence. If you compare the statement here with the statements over with the evidence that was submitted in Ortiz and in Molstad, in both of those cases, Molstad, there were nine people who were convicted of the crime. They were there. They came up with evidence and said, that defendant was not there. That's eyewitness testimony. That's not hearsay. Ortiz was the same way. Ortiz, a witness came forward who basically saw the event, went to Wisconsin, was subsequently found, came back, and submitted an affidavit. Eyewitness. He's testifying to what he saw. Yes, those kinds of witnesses are going to contradict the state's case and are going to be potentially, if believed by the jury and submitted, could change the outcome. Well, this isn't eyewitness. This is saying that a supposed witness there were not supposed, a witness in the case admitted that he lied. For example. Who admitted he lied? The lawyer. The lawyer wasn't a witness in this case. The only, as the judge's decision said here, there is no testimony of statements made by the jail hospital's judge or payers that would constitute impeachment. The only thing that's impeaching is one who didn't testify. And then, that is if you get by the hearsay objection and the comment by counsel that this is being offered for a limited purpose. Because even for that limited purpose, I don't even see how that's impeaching even on the law. It's just trying to take control. What we're trying to take and do is we're trying to go to the back door we can't do to the front door. Which is always the hearsay. I'm not using it to do with the truth of the matter asserted. I'm using it for some other ostensible purpose. But as I pointed out already, when that's done, that's the only purpose we can be used for. We can't be used for anything else. So, if we get by the hearsay, and we get by the fact that the trial judge considered it, again, the fact of the matter remains that it is not, it doesn't, it wouldn't, when I say it wouldn't change the outcome, it's additional impeachment. All of this evidence, a lot of this evidence with respect to did you talk to Wally? All of this, Avers testified to this at the retrial. Avers testified, I got no benefit as a result of my coming forward. All of this, he was counsel on the retrial. All of this came out of counsel, subjected the people's case to scrutiny. He brought out what he thought was welcome. He brought out what he thought was impeaching. He brought out what he thought was the most damning thing. The fact that he may not have impeached everybody down to the other doesn't mean he was ineffective. But the big thing is, with respect to this statement, is the fact that it does not show actual innocence. It does not support a claim of actual innocence at all. And so, for these reasons, the people believe that the trial judge correctly determined, ultimately correctly determined, as I've argued in the brief, we can issue with a couple of his findings with respect to the actual innocence standard. We think this is emotive, because it really doesn't add anything to the case that wasn't already there. And it can't be used to take and say, well, because of this, therefore, these two guys, these two snitches are impeached. It can't be used for that. So, basically, it's emotive at best, but certainly, even if admitted, it would not change the outcome of the trial. And so, that's the reason why we believe the trial judge's decision is correct. With respect to the ineffective assistance, the trial judge made the general finding that most of these, that they were trial offenders. And I know we could probably all sit down and go through all 14, and we have to take the final. We would have done this, we would have done that. Maybe we shouldn't have. We all can second-guess, but there's nothing that has been shown that, and what the trial judge really holed in on, was even though he said it was a matter of trial strategy, the big thing is, is the fact that he kind of holed in on the prejudice part. Kind of saying, you know, look, even if some of these things had been done, I don't think that the outcome would have been different. And you see this through this finding with respect to Dr. DeBosch. The whole thing with the sovereignty was something that was spoken to the family. It was not, however, something that Dr. DeBosch ever testified to. According to the record, when the mom was being cross-examined, she basically testified to the fact, she testified to the fact that the decision on whether or not for the defendant to come to the hospital or not was not made by the family. It was made by the hospital. And so that was, so whatever impact, whatever effect, the whole thing was with the defendant not going to the hospital was clearly blunted by defense counsel's questioning and bringing up the fact that the hospital said not to bring him, not to come. So that's why he didn't come. Not because he had a guilty conscience, but because of the fact that the hospital said not to come, and that was related. So I don't see where bringing out the fact of Dr. DeBosch's felony conviction and his guilty plea to fraud, etc. The trial judge basically so much admitted that that was more than likely something that counsel should have brought out. It's an ineffective act. But we all know, based on the standard, it's just not an ineffective act of prejudice. And because of the fact that Dr. DeBosch never really offered a cause of death, just kind of related to what he saw when he first received the patient, and because the real damning evidence here came from the testimony of a pathologist, that Dr. DeBosch wasn't prejudiced by counsel's lack for not doing that. And I think that that is a very reasonable judgment under the facts of this case. So, unless any of this information came from the two jailhouse judges. That was also, well, as we said, we can't judge the cause of death. But yeah, you're correct. The other damning evidence came from the jailhouse judge that don't make the case in this case. If there wasn't any questions, we would ask this court to approve the trial judgment. Is this a criminal case? Yes. Is this a post-conviction petition? Is this collateral? Is this not a civil action? It is a civil proceeding brought within a criminal case that is still governed by the Supreme Court rule. 272 would still apply. But does 606 apply, or does the civil rule apply that revives the notice of appeal when the final judgment is filed? That was something that I would have to take into my initial reaction because of the fact that even though it is a civil proceeding, it is still nonetheless a criminal action that is still governed by the criminal rule. It's not governed by Appeal 3. I've never seen an appeal. Is there a rule that says that? No. But I would have to take, not off the top of my head, but I would have to take in research that the court wants based on the matter wants. Well, it seems like it's a pretty critical question in this case. I would have to take in what is, but this is a jurisdictional question. And I have always been I've always pursued these as being taken under the criminal appeal because of the fact that it is nonetheless a criminal proceeding. You would know the petition itself is civil. It's a little bit kind of like 2-14-1. It's a civil proceeding. It would be something that I would most certainly look into if the court wants to give us time to take in research. I'd be happy to take in research. Doesn't 651D indicate post-conviction proceedings are governed by the criminal appeal rule? It does. It says that. But the thing is in answering Your Honor's question, I don't like to take in foreclosure because it is simply a fact of wanting to make sure that my answer is completely accurate. I don't like to take in... I mean, 651D says that criminal appeal rules govern post-conviction proceedings. Right. But we're still using Supreme Court Rule 272 and I can vaguely see what Your Honor was saying with respect to civil nature or something. But I don't know. I couldn't take an answer specifically that there was any kind of case and 651D provides... spells it out, but I wouldn't want to take it. It's still on the list of cases. And then if that's the case under 651, 606C would apply. 30 days from the entry of a final judgment. And then we'd have to take a final judgment. 606C, I know I cited it in my motion. And the determination on the final judgment is 271, well in this case 272. And 272 applies to both criminal and civil cases. Yes. So it seems like it really wouldn't make any difference. Okay. But if Your Honor was thinking about... I guess what kind of what kind of water was in the forefront was the automatic investment when it does this. I have never run across that. And that's why I wanted to see what that had to say and what its application may or may not be. In a case like this, in this particular type of situation. Counsel, that's two minutes. Thank you. Any other questions? I don't have any other questions. Thank you. Thank you. Ms. Swan? Rebuttal? Just very briefly, Your Honor. Actually, I would love the opportunity to supplement or provide some more information on that exact issue. Because I think that's obviously the most important issue in this case. This is clearly not me, but that's the field. So I'd be happy to do that even in a very short period of time if Your Honor would want that. Do you have any problem with giving each of them seven days to... Well, if you're looking it up, you might want to look at Stormer 104, Illinois 2nd, at 293. People v. Maynard, 393, Illinois, Apollo 3rd, 605. People v. Boston, 27, Illinois, Apollo 3rd, 246. It sounds like we don't need any... Maynard is discussing that responsibly. Beyond that, my only other statements in rebuttal would be about something that you caught when the opposing counsel mentioned that the damning evidence was the pathologist. Actually, no. The pathologist says the child died of one head trauma. No one's ever disputed that. It's never been questioned. The only question was that this is a whodunit. This is a whodunit with absolutely no information about whodunit until we had two witnesses who are clearly impeachable far more so than they were. That's imperative information that a jury has to have. And the idea that trial counsel had a strategy. I can't begin to imagine what the strategy was, offering up all this damning evidence by his own client and letting everything else slide. But trial strategy is made of much sterner stuff. Much sterner. It's got to be reasonable. It has to be a benefit. And if you're going to offer negative information, it needs to be for a strong benefit that outweighs that negative information. For example, with a witness that has convictions, you're going to frontload that and tell the jury, my witness has convictions before the other side does. That makes sense because you're getting a benefit out of offering bad information. In this case, trial counsel offers up terrible information, terrible, terrible things to no benefit. Absolutely none. That's not a strategy, let alone a reasonable one. So I'd ask that you look really closely at those decisions, at all of them. All 14 of them. And keep in mind that this evidence, despite what the Supreme Court said in their decision about it not being closely balanced, they said that without the benefit of all of this other information. There is a very close balance of evidence here because the only evidence we have that says Danny Balak did this is a bunch of lying jailhouse snitches. Some of them were convicted of lying and the rest of them of doing other terrible things. There's a reason why that information is presented. It's a reason why the rest of the information should have presented. And if the jury had that, they would have been a whole lot more likely to have believed Danny's testimony. None of those things were ever said. None of those confessions were ever made. Combine that with the fact that the so-called confessions don't match the physical evidence, and the jury's going to reach a different conclusion. Even the trial judge saw that. He knew that this evidence was newly discovered and would have made a difference. Let's look at that. That's important. This is a man's life. And he's been saddled with error after error after error after error after error. Maybe even down to the time the mail took to get to McDonough County from my office. How long do we let that go on before we fix it? This is our chance to do that. So we ask that you would reverse the trial. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and the additional written order as quickly as possible. The court will stand in brief recess for a panel change.